*287 OPINION.
Seawell:
The contention of petitioner Mann is that the record proves a sale of the stock by his former wife to the corporation and a purchase of the stock by him from it. He admits a liability to the corporation for the purchase price of the stock and an obligation to the Government to pay a tax on the dividend credited to him to retire the debt. The position of the respondent is that the present value of $165,000 of the bonds was a distribution from the corporation’s surplus and constituted a taxable dividend in 1928, the year the bonds were delivered and the stock transaction was closed.
There is an abundance of evidence in the record showing that the transaction was concluded without any thought being given to the question of from whom petitioner Mann was buying the stock or the effect the transaction would have on his income tax liability. His chief concern was to obtain control of the corporation through stock ownership and the best means open to him were utilized to accomplish that end. In 1930 he contended before the Commissioner in protests prepared by counsel employed for that purpose that he purchased the stock from his wife. While there is evidence tending to support Mann’s present position, we think the whole record *288 sustains the conclusion that Beatrice Mann was the seller of the stock to him.
The real purpose of the equity suit was to determine ownership of the 248 shares of stock outstanding in the name of Beatrice Mann and the conferences had between the parties to the suit at the time the case was called for trial centered around the value of her interest in the corporation, represented by the stock, and the sale of the stock to petitioner Mann. The corporation was not a party to the suit and did not intervene in the divorce action until after the trial court had entered its judgment, and then only for the purpose of determining the validity of the bonds in the appellate court. The corporation was not a party to the settlement agreement filed in the divorce suit, and no subrogation agreement was ever entered into. Both the settlement agreement and the resolutions adopted by the directors and stockholders of the corporation authorizing the issuance of the bonds show an assignment of the stock to petitioner Mann rather than to the corporation. It does not appear that an adjusting entry was ever made in the capital stock account of the corporation to show a retirement of the stock such as would have been necessary under good accounting practice if the corporation had purchased the stock. The stipulation entered in the divorce suit clearly shows a liability on the part of petitioner Mann to pay the bonds for the stock, and to make weekly payments of $200 on account pending delivery of the securities. We conclude that the transaction resulted in a purchase of the stock by petitioner Mann from his wife.
The substance of the agreement between petitioner Mann and his wife is that she was to receive for her and her sister’s stock, a total of 249 shares, the sum of $165,000, with interest at 5 percent per annum, payable, principal and interest, at the rate of $6,000 semiannually, unless the demand were satisfied by a cash payment of the principal amount. Petitioner Mann did not have the funds necessary to close the deal by a cash pajanent and, accordingly, he caused the corporation to authorize a bond issue in the amount of $165,000, payable in accordance with the terms of the agreement with his wife.
In the final analysis the corporation did nothing more than agree to pay petitioner Mann’s obligation as it matured. Neither this promise to pay nor the issuance of the bonds evidencing the promise affected the corporation’s surplus, for there was at all times an implied promise on the part of petitioner Mann to reimburse the corporation for all payments it made to liquidate the bonds. He acknowledged such a liability when the question became important. Each payment made by the corporation was on behalf of, and chargeable to, petitioner Mann. In 1928 the corporation paid *289 Beatrice Mann $9,200 to apply against principal and interest on the bonds upon their acceptance by her. This sum was charged to petitioner Mann and a like sum was credited to him as a dividend. Of the sum of $165,000 in question, only $9,200 constitutes a taxable dividend to Mann. See Ruphane B. Iverson, 29 B. T. A. 863. Cf. George Youell, 18 B. T. A. 599; J. S. Hatcher, 18 B. T. A. 632.
Of tlie amount of $12,000 paid by the Bismarck Tribune Co. in 1929 to retire its bonds, $7,853.44 represented interest on unpaid principal. This sum was charged to petitioner Mann’s personal account in March 1930. He claims that the sum is deductible as interest on indebtedness incurred in the purchase of the stock. Looking through to the ultimate facts we agree with this contention of petitioner. The deferred debt upon which the interest was paid was the debt of petitioner Mann, and through his arrangement with the corporation petitioner Mann paid the interest. We hold the respondent was in error in refusing to allow the amount as a deduction for interest paid by petitioner Mann.
The same amount was claimed by the corporation and allowed by the respondent as interest on the bonds. The respondent now contends that he should not have allowed the deduction on the ground that the bonds do not bear interest.
The bonds do contain a provision that they are without interest, but other documents must be considered to determine the real facts. The clear intent of the settlement agreement between petitioner Mann and his wife was that she should receive for her and her sister’s stock, bonds of the Bismarck Tribune Co. of the face amount of $165,000, payable, principal and interest at 5 percent per annum, at the rate of $6,000 semiannually. This definite understanding is set forth in the resolutions adopted by the directors and sto'ckholders of the corporation authorizing the bond issue. The amortization table in the mortgage executed on all of the corporation’s real and personal property to secure payment of the bonds is made a part of the bonds by reference. This table shows the amount of principal and interest liquidated by payment of the bonds as they mature, and provides a method for computing different sums in case of prepayment of any bond. The mortgage also provides that the total amount of the bonds represents principal of $165,000 and interest at the rate of 5 percent per annum, payable semiannually, on unpaid balances. The bonds and mortgage disclose a purpose to pay the principal sum of $165,000, with interest, on the terms specified. The evidence is against a holding that the obligation incurred was $276,-395.76, without interest, payable $6,000 semiannually. The corporation could have reached the same result by issuing one bond for $165,000, at 5 percent interest, payable, principal and interest, at the rate of $6,000 semiannually. As we have held above, the deferred *290 debt upon which the interest accumulated was the debt of petitioner Mann. Payment of that interest in the way and manner shown by the evidence was payment by Mann and not by the Bismarck Tribune Co. Accordingly, we hold that the allowance of the deduction to the Bismarck Tribune Co. was not proper.
The sum of $7,932.38 was claimed by the Bismarck Tribune Co. as a deduction in 1929 for legal fees and expenses. The respondent disallowed $2,650 as representing personal expenses of petitioner Mann. The corporation contends that the respondent should not have disallowed in excess of $500, the amount allocated and charged to petitioner Mann on the corporate books.
Of the fees in question, $1,950 was charged in 1929 for representing petitioner Mann in the equity suit and $5,000 constitutes the fee charged by counsel for representing the individual and the corporation in the divorce suit and services performed in connection with the bond issue. The corporation was not a party to the equity suit and was not an intervener in the divorce action until after a decree had been entered and then only for the purpose of obtaining a decision by the appellate court on the question of whether or not the bonds were valid. The primary purpose of both proceedings was a settlement of the disagreements between Maim and his wife. The corporation had only a remote interest in the outcome of the litigation. The respondent’s action in disallowing $2,650 of the legal fees and expenses as not being an ordinary and necessary expense of the Bismarck Tribune Co. is sustained. Forty-Four Cigar Co., 2 B. T. A. 1156.

Decision will be entered under Rule SO.